UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. Bank, N.A., as Trustee for the Certificateholders of the LXS 2006-12N Trust Fund,<br><br>　　　Plaintiff<br><br>v.<br><br>Ascente Homeowners Association; Las Vegas Development Group, LLC,<br><br>　　　Defendants | Case No.: 2:15-cv-00302-JAD-NJK<br><br>**Order re: Motions for Summary Judgment**<br><br>[ECF Nos. 79, 84, 85] |

　　　U.S. Bank brings this action to challenge the effect of the 2012 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] The bank sues foreclosure-sale purchaser Las Vegas Development Group, LLC (LVDG) and the Ascente Homeowners Association, seeking a declaration that LVDG purchased the property subject to the bank's security interest. The bank, the HOA, and LVDG filed competing motions for summary judgment on the bank's quiet-title claim. I grant summary judgment in favor of LVDG and the HOA on all of the bank's quiet-title theories except excused tender, grant summary judgment in favor of LVDG on the bank's unjust-enrichment theory, and dismiss the HOA from the remainder of this suit. I then order the bank and LVDG to a mandatory settlement conference with the magistrate judge on the two issues that remain for bench trial: (1) whether the HOA foreclosed on a 2011 lien, or an earlier 2008 one; and (2) if it was the 2011 lien, whether the bank's obligation to tender the superpriority portion of that lien was excused.

---

[1] ECF No. 1 (complaint).

**Factual and Procedural Background**

**A.     The HOA foreclosure**

Donna Tucker purchased the home at 752 Valley Rise Drive in Henderson, Nevada, in 2006 with a $296,000 loan secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[2] MERS assigned that deed of trust to U.S. Bank, as Trustee for the Certificateholders of the LXS 2006-12N Trust Fund on Halloween 2011.[3] The home is located in the Ascente common-interest community and subject to the declaration of covenants, conditions, and restrictions (CC&Rs) for the Ascente Homeowners' Association (the HOA), which obligate homeowners to pay assessments for common community expenses.[4]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure to enforce such a lien.[5] After the assessments on this home became delinquent, the HOA first commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2008.[6] As the bank establishes, it paid that lien off in 2010.[7] But the homeowner continued to default on her payments and the HOA started the non-judicial foreclosure process over in 2011 with a new lien and a new collection agent, Absolute

---

[2] ECF No. 1-1 at 3 (deed of trust).
[3] ECF No. 1-2 (first assignment).
[4] ECF No. 1-1 at 19 (planned-unit development rider).
[5] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[6] ECF No. 1-4 (notice of lien for delinquent assessments).
[7] *See* ECF No. 84 at 3 (noting that "Ascente applied [BANA's] payment to the account in July 2010, bringing the balance down to $0 for the second time since Ascente recorded its first notice in November 2008").

Collection Services, LLC (ACS).[8]  The bank's attorneys, Miles, Bauer, Bergstrom & Winters, LLP, then sent a letter to Ascente through ACS.  That letter stated Miles Bauer's position that the nine months of assessments predating the notice of delinquent assessment comprised the superpriority portion of the association's lien, but that it was "unclear" based on the information available to Miles Bauer how much those nine months of assessments now were for this property.[9]  Whatever it was, Miles Bauer "offer[ed] to pay that sum upon presentation of adequate proof of the same by the HOA."[10]  ACS responded with a letter that explained its position that, until the bank itself foreclosed on the deed of trust, its tender of the superpriority portion would not stop ACS from foreclosing, and ACS advised that it charged $50 for an account statement, which would not provide a "9 month super priority lien Statement of Account" but rather "show the entire amount owed."[11]  Miles Bauer tendered no portion of the lien, and the home was sold to LVDG at a foreclosure sale on April 17, 2012, for $5,550.[12]

**B.     The bank's claims**

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*") in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[13]  The bank brings this action to save its deed of trust from extinguishment.  It asserts claims entitled quiet title, unjust enrichment, and injunctive relief; the

---

[8] ECF No. 85-2 (notice of delinquent assessment lien); 85-3 (notice of default and election to sell).
[9] ECF No. 84-14 at 9.
[10] *Id*.
[11] ECF No. 85-7 at 2.
[12] ECF No. 1-17 (trustee's deed upon sale).
[13] *SFR I*, 334 P.3d at 419.

latter two are pled against LVDG only.[14] Injunctive relief is not an independent cause of action—it's a remedy for a true claim. Here, it is pled as a pre-trial remedy in conjunction with the bank's quiet-title claim, so I construe it as such. The quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[15] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[16]

**C.     The competing summary-judgment motions**

Discovery has closed[17] and all parties move for summary judgment—the bank and the HOA targeting only the bank's quiet-title claim,[18] and LVDG challenging both the quiet-title claim and the unjust-enrichment claim.[19] The bank offers three reasons why I must hold that the HOA foreclosure sale did not extinguish its deed of trust: (1) the HOA foreclosed on an earlier lien, the superpriority portion of which had been long-since satisfied; (2) its tender of the superpriority amount was excused because the HOA's agent ACS would have rejected any tender the bank would have made; (3) unfairness plus a grossly inadequate sales price compel the court to set aside the sale under the Nevada Supreme Court's holding in *Nationstar Mortgage*

---

[14] ECF No. 1 (complaint).

[15] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[16] *Id.* at 1112.

[17] *See* ECF No. 58 (noting that discovery closed 7/25/2019).

[18] ECF Nos. 79, 84.

[19] ECF No. 85.

*LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*;[20] and (4) Nevada's statutory scheme for HOA foreclosures violated due process.[21] LVDG and the HOA oppose the bank's motion[22] and move for judgment in their favor.[23]

## Discussion

**A.   Standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[24] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[25] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[26]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[27] Once the moving party establishes the absence of a genuine issue of

---

[20] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017).

[21] ECF No. 84.

[22] ECF Nos. 93 (LVDG opp.), 88 (HOA opp.).

[23] ECF Nos. 79 (HOA msj), 85 (LVDG msj).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[25] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[26] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[27] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[28] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[29] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[30]

**B.   The bank's arguments**

   *1.   Whether the HOA foreclosed on its 2008 or 2011 lien is a disputed fact.*

The bank's first argument is that the sale to LVDG wasn't a foreclosure on the 2011 lien, but on the 2008 lien, which had been twice satisfied, leaving no superpriority portion to trump its deed of trust. It grounds this argument in the Nevada Supreme Court's holding in *Property Plus Investments, LLC v. MERS*, which it contends stands for the proposition that, before the HOA could enforce the new lien, it had to formally rescind the old one, and Ascente did not. LVDG's deed even represents that it was the 2008 lien that was foreclosed upon.

The bank overreads *Property Plus*. That case establishes the important HOA-lien principle that "NRS 116.3116 does not limit an HOA to one lien enforcement action or one superpriority lien per property forever."[31] Applying that principle to the facts before it, the

---

[28] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[29] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[30] *Celotex*, 477 U.S. at 322.

[31] *Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys.*, 401 P.3d 728, 731 (Nev. 2017).

*Property Plus* court held, "[t]herefore, when an HOA rescinds a superpriority lien on a property, the HOA may subsequently assert a separate superpriority lien on the same property based on monthly dues, and any maintenance and nuisance abatement charges, accruing after the rescission of the previous superpriority lien."[32] The Nevada Supreme Court and Nevada Court of Appeals have cited the decision in numerous HOA-foreclosure cases for the broad proposition that "an HOA can enforce a second superpriority default by restarting the foreclosure process."[33] But the *Property Plus* court did not hold that an HOA must rescind a superpriority lien before asserting a subsequent one, and such a reading ignores that the Nevada Supreme Court has recognized that HOA liens can be terminated by foreclosure or tender, too.[34] Because there is no material dispute that the 2008 lien was paid off and thereby terminated, the HOA had the right to enforce the 2011 superpriority default by restarting the foreclosure process with the 2011 notice of default.

But whether the sale to LVDG was made to foreclose on the 2008 or 2011 lien is not so clear. As the bank points out, the Trustee's Deed Upon Sale recites that the foreclosure sale was made "pursuant to . . . that certain Notice of Delinquent Assessment Lien recorded on

---

[32] *Id*. at 731–32.

[33] *See, e.g., Bank of Am., N.A. v. Thomas Jessup, LLC Series VII,* 435 P.3d 1217, 1220 (Nev. 2019), *vacated on other grounds on reconsideration en banc*, 462 P.3d 255 (Nev. 2020); *Doreen Properties, LLC v. U.S. Bank, N.A.*, 2019 WL 2474893, at *1 (Nev. Ct. App. June 12, 2019) ("Because no maintenance or nuisance abatement costs had been incurred at the time the tender was made, the tender exceeding 9 months of assessments was sufficient to cure the default as to the superpriority portion of the HOA's lien. If the HOA had subsequently incurred such costs, it would have been required to issue new foreclosure notices if it sought to afford those costs superpriority status.").

[34] *See Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 117 (Nev. 2018) (noting that "[a] valid tender of payment operates to discharge a lien or cure a default" and "statutory liens continue in existence until they are satisfied or terminated by some manner recognized by law).

NOVEMBER 12, 2008 instrument number 0003775 Book 20081112 Official Records of CLARK County . . . ."[35]  LVDG insists that this reference had to be "a scrivener's error."[36]  It notes that the deed goes on to reference the 2011 Notice of Default and Election to Sell, which recites that the notice "is given . . . pursuant to that certain Notice of Delinquent Assessment Lien, recorded on 1/19/11 Document no. 02959 book 20110119 of Official Records in the office of the Recorder of Clark County, State of Nevada."[37]  The Notice of Trustee's Sale preceding the foreclosure similarly referenced the 2011 lien,[38] as did the Miles Bauer letter.[39]  Though the evidence that the reference to the 2008 lien was merely error is compelling, that reference creates a genuine issue of fact about which lien was foreclosed upon, and I cannot simply disregard it.  Certainly, this point cannot be lost on LVDG when it argues vehemently elsewhere that "the recitals made in the HOA Foreclosure Deed are conclusive proof of the matters recited."[40]  I thus cannot decide on summary judgment which lien was foreclosed upon.

### 2. *Disputed facts preclude summary judgment on an excused-tender theory.*

The bank's next argument on summary judgment is a tender theory.  The tender theory recognizes that, in order for an HOA's non-judicial foreclosure sale to wipe out the first deed of trust, the HOA must be foreclosing on the superpriority portion of the lien.  But if the superpriority portion of the lien has been satisfied before the sale, that tender "cure[s] the default," so "the HOA's foreclosure on the entire lien result[s] in a void sale as to the

---

[35] ECF No. 85-5 at 2–3.
[36] ECF No. 93 at 12.
[37] *See* ECF No. 85-3 at 3.
[38] *See* ECF No. 85-4 at 2.
[39] *See* ECF No. 84-14 at 8.
[40] ECF No. 85 at 8.

superpriority portion."[41]  The net result of such a tender is that the "first deed of trust remain[s] after foreclosure" and the foreclosure-sale buyer purchases the property subject to the deed of trust.[42]

The bank didn't tender the superpriority portion of the HOA lien on this property before the foreclosure sale.  Though it offered to make such a payment, it did not tender one.  The bank contends that its obligation to tender that payment was excused because the HOA's foreclosure agent, Absolute Collection Services, LLC (ACS), had made it known that it would reject such a tender[43] so tender would have been futile, and the law does not require futile acts.

The en banc Nevada Supreme Court adopted this excused-tender theory in *7510 Perla Del Mar Ave. Trust v. Bank of America*,[44] holding that, although a mere "promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender," the obligation to tender the superpriority amount is excused if tender would have been futile because it would have been rejected.[45]  In *Perla Del Mar*, Bank of America's attorneys, Miles Bauer, sent a letter to the HOA's foreclosure agent, Nevada Association Services (NAS), "offering to pay the yet-to-be-determined superpriority portion of the HOA's lien . . . ."[46]  Though NAS received the letter, it did not respond to it and went forward with the sale.  The evidence at the quiet-title trial "established that at the time relevant to this action, it was NAS's business policy to have its receptionist reject any check for less than the full lien amount" and

---

[41] *Diamond Spur*, 427 P.3d at 121.
[42] *Id*.
[43] ECF No. 61 at 4–5.
[44] *7510 Perla Del Mar Ave. Trust v. Bank of Am.*, 458 P.3d 348 (Nev. Feb. 27, 2020) (en banc).
[45] *Id*. at 350, 352.
[46] *Id*. at 350.

9

that "Miles Bauer and the Bank had knowledge of this business practice."[47] "As a result," the Nevada Supreme Court held, "the Bank was excused from making a formal tender in this instance because, pursuant to NAS's known policy, even if the Bank had tendered a check for the superpriority portion of the lien, NAS would have rejected it."[48] The Court therefore "conclude[d] that the district court properly determined that the Bank preserved its interest in the property such that Perla Trust purchased the property subject to the Bank's first deed of trust."[49]

The instant facts are materially indistinguishable from those in *Perla Trust* only to a point. Miles Bauer lawyer Rock Jung, Esq. sent ACS a nearly identical letter, stating that "my client hereby offers to pay [nine months' of common assessments pre-dating the Notice of Default] upon presentation of adequate proof of the same by the HOA."[50] ACS responded with a letter "making" Jung "aware" that "it [was ACS's] view" that a lender could satisfy the superpriority lien by tendering nine months' of common assessments only if the lender had already foreclosed on its deed of trust.[51] And as Kelly Mitchell, the collection manager and owner of ACS acknowledges in a declaration submitted in support of LVDG's opposition, "[d]uring the applicable time frame of this case, ACS and Miles Bauer disagreed regarding the amount of the HOA Lien that was entitled to superpriority"[52] because it was ACS's position that the superpriority lien included "[n]ine months of assessments, late fees, interest and . . .

---

[47] *Id*. at 351.
[48] *Id*.
[49] *Id*.
[50] ECF No. 84-14 at 8.
[51] ECF No. 93-7 at 2.
[52] ECF No. 85-11 at 4, ¶ 16 (Mitchell decl.).

10

collection costs."[53] Mitchell further declares that, had Miles Bauer tendered a check that ACS believed "was insufficient to satisfy the entire HOA Lien, ACS would have thereafter continued with the foreclosure proceedings related to the Property."[54] The record is thus clear that, had Miles Bauer tendered a check for nine months of assessments, ACS would have foreclosed anyway because it erroneously believed that the superpriority portion of the lien included fees, interest, and collection costs on top of the assessments.

But the key to a futile tender is not whether the foreclosure would have gone forward but whether it was known that the check for the superpriority portion of the lien would have been rejected.[55] The bank offers the testimony of Mr. Jung from another trial that it was his experience that ACS was not accepting checks from Miles Bauer in 2011, suggesting that it was ACS's policy to reject all checks for less than the full lien amount.[56] But Mitchell declares that, "[i]f called to testify in this matter, [she] will testify that ACS would have accepted any check that Miles Bauer . . . might have transmitted to ACS in relation to the Property."[57] So it remains

---

[53] ECF No. 61-7 at 19:15–16 (Mitchell depo.). This position was rejected in *SFR I*. *See SFR I*, 334 P.3d at 411 (stating that "[t]he superpriority piece[] consist[s] of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges"). The parties point to no evidence in the record to suggest that the superpriority lien on this property would have included any charge for maintenance or nuisance abatement.

[54] ECF No. 85-11 at 5, ¶ 23.

[55] *See Perla Del Mar*, 458 P.3d at 351 (noting that "a generally accepted exception to" the "rule that a promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender" is that the obligation to tender the superpriority amount is excused if the recipient has a known policy of rejecting payment for less than the full lien amount).

[56] ECF No. 84-25 at 71, 75.

[57] ECF No. 85-11 at 6, ¶ 29; *see also* ECF No. 84-25 at 40 (Mitchell testified at that same trial that it was ACS's policy that "if the check said paid in full [it] would not accept that payment," but [i]f the check did not say paid in full[, ACS] would accept that payment . . . ."). Ms. Mitchell's declaration corroborates that, for this property, "[s]o long as a check was sent without

a disputed issue of fact whether ACS would have rejected a check from Miles Bauer at the time relevant to this foreclosure. This genuine issue of fact precludes summary judgment on the bank's excused-tender theory.

### 3. The bank has not established that it is entitled to set aside the sale under *Shadow Canyon*.

The bank also contends that the court should set aside the sale because LVDG purchased the property at a grossly inadequate price and the sale was plagued with irregularities that rendered it unfair. This price-plus-irregularities theory is grounded in the Nevada Supreme Court's holding in *Shadow Canyon* that, although inadequacy in price alone will not justify setting aside a foreclosure sale, "where the inadequacy of the price is great, a court may grant relief based on slight evidence of fraud, unfairness, or oppression" that affected the sale.[58] The court must "analyze the totality of the circumstances when determining whether to set aside an HOA foreclosure sale on equitable grounds."[59] As the Nevada Supreme Court clarified in *Resources Group, LLC v. Nevada Association Services, Inc.*, "if the totality of the circumstances demonstrates that the sale itself was affected by 'fraud, unfairness, or oppression,' then a court may set the sale aside. This has been the rule in Nevada since 1963."[60]

The bank argues that the property was worth $165,000 based on its appraisal, so LVDG's $5,550 purchase price was grossly inadequate.[61] It adds that ACS's letter informed Miles Bauer

---

the words 'paid in full' or similar wording upon it, ACS would have accepted the check regardless of the amount." ECF No. 85-11 at 4, ¶ 18 (Mitchell decl.).

[58] *Shadow Canyon*, 405 P.3d at 646–47.

[59] *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 160 (Nev. 2019) (citing *Shadow Wood*, 366 P.3d at 1114).

[60] *Id.* at 160–61.

[61] ECF No. 84 at 12.

that the HOA would foreclose only on a subpriority lien, which was a misrepresentation that rendered the sale unfair, and that unfairness was compounded by the way in which ACS ultimately distributed the sale proceeds.[62]

Even if I agreed that LVDG's purchase price was grossly inadequate and that the convoluted language in ACS's letter suggested that the HOA's lien was junior to the deed of trust (it didn't),[63] the bank is still missing one required element: it has offered nothing to show that this unfairness impacted the sale. As the *Shadow Canyon* Court explained, "if the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."[64] The bank points to nothing in the record that would suggest that it sat on its hands—or that anyone else connected to this sale acted or failed to act—in reliance on ACS's letter. Plus, I am not persuaded that those representations could have affected the sale because everyone "is presumed to know the law,"[65] and Nevada law provided that HOA superpriority liens are "prior to all other liens and encumbrances[,]' . . . even a first deed of trust."[66] So, the bank has not shown—and cannot show—that it is entitled as a matter of law to set aside the foreclosure sale based on a *Shadow Canyon* price-plus-unfairness theory. These fatal

---

[62] *Id*. at 13–14.

[63] ECF No. 84-15 at 11. Nothing in the letter states, as the bank claims at ECF No. 84 at 11, that the bank's "position as 'senior lien holder' was secure because the HOA's superpriority lien was not triggered until a deed of trust foreclosure." Though the bank references the letter as "US BANK 000180," *see id.*, it bears the bates number US BANK 000188. *See* ECF No. 84-15 at 11.

[64] *Shadow Canyon*, 405 P.3d at 648–49.

[65] *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one [sic] is presumed to know the law and this presumption is not even rebuttable.").

[66] *SFR I*, 334 P.3d at 410.

deficiencies also entitle the defendants to summary judgment in their favor on the bank's *Shadow Canyon* theory.

### 4. *Nevada's HOA-foreclosure scheme did not violate the bank's due-process rights.*

The bank's final argument for summary judgment is that Nevada's HOA foreclosure scheme violated its due-process rights because it did not require HOAs to inform mortgage lenders of the amount of the superpriority portion of the lien or the risk to their deeds of trust. Both the Nevada Supreme Court and the Ninth Circuit Court of Appeals have held that this statutory scheme required constitutionally adequate notice.[67] The bank also received actual notice of this sale, and all of the notices were duly recorded.

As explained *supra*, the law presumes that the bank knew that NRS 116.3116(2) meant that unpaid HOA assessments put their first deed of trust at risk; due process did not require the HOA to tell the bank what the law already did. And the fact that the notice did not disclose the superpriority amount is of no legal consequence because NRS Chapter 116 also gave lienholders like the bank notice that the HOA may have a superpriority interest that could extinguish their security interests, putting them on inquiry notice.[68] Because the bank knew of the risk to its interest, it could have sued to determine the superpriority amount, attended the HOA sale and bid

---

[67] *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019); *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).

[68] *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, 2016 WL 1298108, at *7, 9 (D. Nev. Mar. 31, 2016) (concluding that "[d]ue process does not require an HOA to state the superpriority amount in the foreclosure notice and lienholders have meaningful opportunities to preserve their interests in the property").

on the property, or paid the entire lien amount and sued for a refund.[69] As the Nevada Supreme Court noted when rejecting this same argument in *SFR I*, "it is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."[70]  Given that the bank had notice—both from the notice of foreclosure sale and NRS Chapter 116—that its deed of trust was in jeopardy and an opportunity to protect that interest, the bank cannot establish a due-process violation here.  This inability to prove this due-process-violation theory compels the denial of the bank's motion and entitles the defendants to summary judgment in their favor on this theory.

## C. LVDG's arguments

### 1. Deed recitals

LVDG contends that it is entitled to summary judgment on the bank's claims because NRS § 116.31166 gives it the right to rely on certain recitals contained in the foreclosure deed, and those recitals establish that the deed of trust was extinguished.[71]  But the Nevada Supreme Court recently rejected this argument in *Saticoy Bay LLC Series 133 McLaren v. Green Tree Servicing LLC*, saying "we now expressly hold that NRS 116.31166's deed recitals do not 'render such deeds unassailable.'"[72]  "NRS 116.31166 do[es] not insulate the circumstances attested to in the recitals from review by courts in appropriate cases," like whether a tender theory "preserved the original deed of trust, such that [the purchaser] took the property subject

---

[69] *See, e.g., Bank of New York Mellon v. Nevada Ass'n Servs., Inc.*, 2019 WL 2427938, at *5 (D. Nev. June 10, 2019).

[70] *SFR I*, 334 P.3d at 418 (quoting *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)).

[71] ECF No. 85 at 9–11.

[72] *Saticoy Bay LLC Series 133 McLaren v. Green Tree Servicing LLC*, 487 P.3d 376, 379 (Nev. 2020) (quoting *Shadow Wood*, 366 P.3d at 1107).

to" the deed of trust, "notwithstanding the recital of default in the foreclosure deed."[73] *McLaren* makes it clear that the deed recitals do not prevent this court from considering whether, and holding that, the bank was excused from tendering the superpriority portion of the HOA's lien on this property to preserve its deed of trust.

### 2.     BFP

LVDG also contends that its status as a bona fide purchaser (BFP) of the property for $5,550 means that the deed of trust cannot be enforced against it.[74]  But, as the Nevada Supreme Court has held, when tender is made[75] or excused[76] before the foreclosure sale, the purchaser's "status as a BFP is irrelevant"[77] and the deed of trust is preserved.  Even if bona fide purchaser status could save LVDG from having this security interest stick to this property, this seasoned, professional purchaser[78] has not established that it can claim such status here.  Though LVDG argues that "the Bank has presented no evidence whatsoever that LVDG possessed any notice of any pre-sale dispute between" the bank and the HOA,[79] the property records certainly contained notice of this deed of trust, and when LVDG bought this property in April 2012 for a fraction of the original loan value, the legal effect of an HOA's foreclosure sale on a lender's first trust deed

---

[73] *Id.*

[74] ECF No. 78 at 21–23.

[75] *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC* ("*SFR II*"), 427 P.3d 113, 121 (Nev. 2018), *as amended on denial of reh'g* (Nov. 13, 2018) (noting that "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceeding," such as pre-sale tender of the superpriority portion, "renders the sale void" as to that portion).

[76] *Perla Del Mar*, 458 P.3d at 351 (holding that actual tender is excused, and bank's interest is preserved, if it is apparent that tender would have been rejected).

[77] *SFR II*, 427 P.3d at 121.

[78] *See* ECF No. 84-19 at 6 (deposition of LVDG's managing member Jon Jentz, testifying that LVDG was formed to purchase properties to rent).

[79] ECF No. 93 at 22.

was unsettled.[80] So LVDG has not shown that it purchased this property "with[out even] . . . reasonable cause to know that there exist[ed] a defect in, or adverse rights, title or interest to, the real property,"[81] as it must to claim BFP status.

### 3. *Unjust Enrichment*

Finally, LVDG moves for summary judgment in its favor on the bank's unjust-enrichment claim.[82] It notes that the bank "conferred no benefit upon LVDG" as required to prevail on such a claim.[83] The bank offers no response to this argument. As a result, there is no genuine issue of fact to support this claim, and I grant LVDG's request for summary judgment in its favor on this claim.

### D. The HOA's arguments

Early in this action, the HOA moved to dismiss the claims against it, arguing that it was not a necessary party to this dispute. I denied that motion because the bank had prayed for a variety of remedies, including a declaration that the sale was invalid, and unwinding that sale might have put the HOA's lien back in play.[84] In its motion for summary judgment, the HOA reasserts its request to be released from this case because it has no dog in this title fight between the bank and LVDG. Because the only theories still alive in this case are excused tender and that

---

[80] *Freedom Mortg. Corp. v. Las Vegas Dev. Grp.*, LLC, 106 F. Supp. 3d 1174, 1176 (D. Nev. 2015) (recounting that, "[i]n the years following Las Vegas's real estate crash, lenders and investors were at loggerheads over the legal effect of a homeowners association's (HOA's) nonjudicial foreclosure of a superpriority lien on a lender's first trust deed," and the Nevada Supreme Court didn't provide any clarity until *SFR I* was decided in September 2014).

[81] *See* ECF No. 83 at 6 (quoting NRS 11.180's definition of BFP).

[82] *See* ECF No. 85 at 29. LVDG also asks for such relief on the bank's injunctive-relief claim, but because I do not construe that claim as an independent cause of action, and it is a remedy that rises and falls with the yet unresolved tender claim, I deny LVDG's request at this time.

[83] *Id*.

[84] ECF No. 20 at 3 (order denying motion to dismiss).

17

the HOA foreclosed on a lien on which the superpriority portion had been satisfied, and the remedy for such claims is simply that the purchaser takes title subject to the bank's interest, I find that the HOA is no longer a necessary party and I grant its request to be dismissed[85] from the remainder of this action.

## Conclusion

IT IS THEREFORE ORDERED that:

- U.S. Bank's Motion for Summary Judgment **[ECF No. 84] is DENIED**.

- Las Vegas Development Group, LLC's Motion for Summary Judgment **[ECF No. 85] is GRANTED in part and DENIED in part.  Partial summary judgment is entered in favor of the defendants on the bank's due-process-violation theory and the *Shadow Canyon* theory, but the motion is denied in all other respects.**  The court finds that FRCP 54(b) certification of this decision on this small portion of this case is not merited.

- The Ascente Homeowners Association's Motion for Summary Judgment **[ECF No. 79] is GRANTED in part** in that its request to be dismissed from the remainder of this action is granted; the motion is denied in all other respects.

- This order leaves for trial only (1) the issue of which lien was foreclosed upon and (2) the bank's quiet-title claim based on an excused-tender theory.

. . .

---

[85] Though the HOA asks for summary judgment, the proper vehicle is dismissal, not summary judgment.

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.** The parties' obligation to file their proposed joint pretrial order is tolled until 10 days after the settlement conference.

Dated: February 25, 2021

_____
U.S. District Judge Jennifer A. Dorsey